STEVEN SANDERS,

                Plaintiff,

v.

SHARON LAPLANTE.

                Defendant.

3:19-cv-01151 (CSH)

**OCTOBER 25, 2019**

## INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

*Pro se* plaintiff Steven Sanders, currently incarcerated at Carl Robinson Correctional Institution in Enfield, Connecticut, has filed a complaint pursuant 42 U.S.C. § 1983 against defendant Dr. Sharon LaPlante ("Defendant" or "Dr. LaPlante"). Sanders contends that Dr. LaPlante, now retired, was deliberately indifferent to his serious medical needs while he was in pretrial custody. As a result of the alleged violation, Sanders seeks damages and injunctive relief.

The Court now reviews Sanders' Complaint to determine whether his claims may proceed under 28 U.S.C. § 1915A. For the following reasons, the Complaint is DISMISSED.

## I.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This

liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted), and the Court may not "invent factual allegations" that the plaintiff has not pleaded, *id*.

## II.    BACKGROUND

On April 10, 2018, Sanders was seen by Nurse Lisa and Defendant at Hartford Correctional Center, where he was housed while awaiting trial. Doc. 1 ("Complaint") at 4. When Sanders told Defendant his name, she asked whether he was the inmate complaining about weight loss. *Id.* Sanders told her that he had lost weight between June and October 2017. *Id.* Even though he was eating double portion trays at all meals and supplementing the meals with food from the commissary, he had not gained weight. *Id.*

While Defendant was weighing Sanders, he complained of frequent dizziness and constant urination, especially at night. *Id.* Defendant compared Sanders' current weight with his intake weight from September 2016 and stated that he had only lost ten pounds. *Id.* Defendant dismissed Sanders complaints as "a personal problem." *Id.* Sanders told Defendant about his family history of cancer, heart problems, and diabetes, and requested a blood test. *Id.* He also told her that he had been hospitalized prior to his incarceration for swollen lymph nodes. *Id.* Although a biopsy was negative, the oncologist wanted to keep a close eye on his condition. *Id.* Defendant denied Sanders' request for a blood test, stating that, unless Sanders was diagnosed with something, the test would

waste money and her time. *Id.* Defendant told Sanders he seemed "fine" and dismissed him. *Id.*

In December 2018, Sanders was transferred to MacDougall Correctional Institution. *Id.* at 5. At intake, he weighted 172 lbs. *Id.* On February 3, 2019,[1] Sanders saw Nurse Burns and told her about his issues. *Id.* She weighed him and noted that he had lost six pounds, one pound per week. *Id.* She ordered a blood test and lab work. *Id.* On March 3, 2019, Sanders was diagnosed with diabetes. *Id.* He was brought to the Chronic Illness and Disease exam room where a doctor informed him that his condition was serious and that he needed to start taking insulin and medication immediately. *Id.* Sanders now suffers from astigmatism in both eyes and has poor eyesight, 20/100. *Id.* He requires prescription glasses to see and drive. *Id.*

### III.  DISCUSSION

Sanders contends that Defendant was deliberately indifferent to his serious medical need. A pretrial detainee's claim of unconstitutional conditions of confinement – including deliberate indifference to a detainee's medical needs – is governed by the Fourteenth Amendment due process clause rather than the Eighth Amendment cruel and unusual punishment clause. *Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017); *see also Valdiviezo v. Boyer*, 752 F. App'x 29, 32-33 (2d Cir. 2018) (*Darnell* standard applies to claims for deliberate indifference to serious medical needs). The Second Circuit explained the rationale for this distinction in *Darnell*: "pretrial detainees have not been convicted of a crime, and thus may not be punished in any manner – neither cruelly and unusually nor otherwise." *Id.* (internal quotation marks and citation omitted). Nonetheless, a pretrial detainee's rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.*

---

[1] Sanders lists this and subsequent dates as 2018. Based on the chronology of events, the Court assumes he intended to reference February and March 2019 and has corrected the dates in this summary of his allegations.

To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must meet a two-prong test. The first prong is the same for claims by sentenced prisoners under the Eighth Amendment and pretrial detainees under the Fourteenth Amendment. The alleged deprivation of medical care must be "sufficiently serious*." See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second prong differs for sentenced inmates and pretrial detainees. Under the Fourteenth Amendment, the second prong, also known as the *mens rea* prong, is defined objectively. *Darnell*, 849 F.3d at 35. "[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

## A. Sufficiently Serious Deprivation

Generally, to satisfy the objective prong of the deliberate indifference standard, a plaintiff must show "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)); *see Salahuddin*, 467 F.3d at 279. The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Alternatively, where "a prisoner receives some care, but allegedly inadequate care, the analysis of whether there was a sufficiently serious medical condition is more complex." *Hardy v. City of New York*, 732 F. Supp. 2d 112, 128 (E.D.N.Y. 2010). In such cases, the court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 279; *see also, e.g.*, *Ferguson v. Cai*, No. 11-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (quoting *Edmonds v. Central N.Y. Psychiatric Ctr.*, No. 10-5810, 2011 WL 3809913, at *4 (S.D.N.Y. Aug. 25, 2011)) (collecting cases); *DiChiara v. Wright*, No. 06-6123, 2011 WL 1303867, at *6 (E.D.N.Y. Mar. 31, 2011). In evaluating whether a delay in treatment is sufficiently serious, "the actual medical consequences that flow from the alleged denial of care will be highly relevant." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003); *see also Snyder v. Alam*, No. 15-cv-4033, 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016) (stating that "only those injuries plaintiff specifically attributes to the delay will be considered").

For purposes of this initial review, the Court concludes that insulin-dependent diabetes constitutes a sufficiently serious medical condition. *See Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (noting that diabetes is a condition the courts have considered a serious medical need); *see also Diaz v. Fox*, No. 2:14-cv-2705 JAM CKD P, 2016 WL 3519318, at *2 (E.D. Cal. June 28, 2016) (assuming diabetes is a serious medical need at pleading stage); *Sever v. Perrin*, No. 3:11-cv-29-KRG-KAP, 2013 WL 4855338, at *3 (W.D. Pa. Sept. 11, 2013) (noting that insulin dependent diabetes is a serious medical need) (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d

575, 582 (3d Cir. 2003))).  Additionally, to the extent the Court must consider "the actual medical consequences that flow from the alleged denial of care," Sanders has alleged that he now suffers from astigmatism in both eyes and has poor eyesight.  Viewed in the light most favorable to Plaintiff, this could be read to allege that the delay in diagnosing and treating his diabetes contributed to the degeneration of his eyesight.[1]  Therefore, at this stage, the Complaint alleges a sufficiently serious medical condition.

### B.  Sufficiently Culpable State of Mind

Turning to the *mens rea* prong, the Court must determine whether Sanders has plausibly alleged that Dr. LaPlante knew or should have known that her actions posed an excessive risk to Sanders' health.  *Darnell*, 849 F.3d at 35.  Importantly, even after *Darnell*, it is well-settled that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Clay v. Kellmurray*, 465 Fed. Appx. 46, 47 (2d Cir. 2012) (quoting *Chance*, 143 F.3d at 703); *see also Darnell*, 849 F.3d at 35 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence").  Rather, the applicable standard is akin to civil recklessness, and does not require the defendant to be subjectively aware of the harm resulting from her acts or omissions.  *See Feliciano v. Anderson*, No. 15CV4106LTSJLC, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017)

The crux of Sanders' complaint is that Dr. LaPlante failed to order a blood test that may have disclosed his diabetes, despite being informed of Plaintiff's weight loss, symptoms, and family

---

[1]  Untreated or improperly managed diabetes may lead to long-term eye damage.  *See* NATIONAL INSTITUTE OF DIABETES AND DIGESTIVE AND KIDNEY DISEASES, *Diabetic Eye Disease, available at* https://www.niddk.nih.gov/health-information/diabetes/overview/preventing-problems/diabetic-eye-disease (last visited 10/23/2019).

medical history. But the "law is clear that a medical decision about whether to order a test . . . is 'at most medical malpractice,' which can be properly redressed under state tort law." *Youmans v. City of N.Y.,* 14 F. Supp. 3d 357, 363 (S.D.N.Y. 2014) (citation omitted). Even reading Plaintiff's Complaint as a broader indictment of the quality and thoroughness of the examination he was given, disagreements over diagnostic methods "implicate medical judgments and, at worst, negligence amounting to medical malpractice," but do not give rise to constitutional claims under § 1983. *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Flemming v. Velardi*, No. 02-CV-4113 (AKH), 2003 WL 21756108, at *3 (S.D.N.Y. July 30, 2003) (dismissing deliberate-indifference claim where plaintiff argued that "he was denied adequate treatment because he was not given a full-body x-ray, an MRI, a CT scan, or a referral to a neurologist"). The Court also notes that Sanders met with Dr. LaPlante on one occasion, and does not allege that he ever followed up regarding his complaints. In light of these facts, Plaintiff does not plausibly allege that Dr. LaPlante "knew or should have known" that her medical decisions when examining Plaintiff "posed an excessive risk" to his health or safety.

### C. Injunctive Relief

Sanders also seeks injunctive relief in the form of a policy change to ensure "no one unsentenced or sentenced should have to go through what I went through." Complaint at 5. Injunctive relief in cases filed by prisoners regarding prison conditions must be narrowly tailored. "The court shall not approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1).

Sanders' Complaint relates to one incident in 2018 by a doctor who has since retired. As Defendant has retired, there is no possibility that the incident will be repeated with another inmate. The facts alleged show that Sanders received appropriate treatment from other medical staff at a different correctional facility. The Court concludes that Sanders' request is not narrowly drawn and that a policy change would extend further than necessary to address the alleged violation of his constitutional rights. Accordingly, the request for injunctive relief is dismissed.

### III.    CONCLUSION

For the reasons stated herein, Plaintiff's Complaint is DISMISSED. To the extent Sanders can remedy the deficiencies identified in this Order, he may file an amended complaint within twenty-one (21) days of the date of this Order. If no amended complaint is filed within twenty-one (21) days of the date of this Order, those claims will be dismissed with prejudice.

**It is SO ORDERED.**

Dated: October 25, 2019
       New Haven, Connecticut

                      */s/ Charles S. Haight, Jr.*
                      Charles S. Haight, Jr.
                      Senior United States District Judge