UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN SANDERS,
    *Plaintiff*,

v.

SHARON LAPLANTE,
    *Defendant*.

Case No. 3:19-cv-1551 (CSH)
September 26, 2023

### INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

*Pro se* plaintiff Steven Sanders, formerly incarcerated at Carl Robinson Correctional Institution in Enfield, Connecticut, has filed a complaint pursuant 42 U.S.C. § 1983 against defendant Dr. Sharon LaPlante ("Defendant"). Sanders argues that Defendant, now retired, was deliberately indifferent to his serious medical needs while he was a pretrial detainee. On October 25, 2019, the Court filed an Initial Review Order [Dkt. No. 8] dismissing the complaint and affording Sanders an opportunity to file an amended complaint to cure the deficiencies identified in the Order. Sanders has filed a document captioned Amended Complaint [Dkt. No. 10]. The Court will address whether the Amended Complaint cures those deficiencies.

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to *pro se* litigants, it is well-established that "[p]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 3006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro

se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers.'" (internal citations omitted)).

This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).

## II. BACKGROUND

On April 10, 2018, Sanders was seen by Defendant and "Nurse Lisa" at Hartford Correctional Center, where he was housed awaiting trial. Am. Compl. [Dkt. No. 10] at 1. Defendant asked Sanders his name, and then asked whether he was the inmate complaining about weight loss. *Id.* Sanders told her that he had lost "significant" weight between June and October 2017. *Id.* Even though he was eating double portion trays at all meals and supplementing the meals with food from the commissary, he had not gained weight. *Id.* He also complained of frequent urination, nausea, and dizziness for long periods. *Id.*

Defendant weighed Sanders and compared his current weight with his intake weight from September 2016. She stated that Sanders had lost only ten pounds and determined that he was "fine." *Id.* Defendant dismissed his complaints as "a personal problem." *Id.* Sanders told Defendant that he has a family history of cancer, heart disease, and diabetes and requested a blood test. *Id.*

3

Sanders also told her that he had been hospitalized prior to his incarceration for swollen lymph nodes. *Id.* Although a biopsy was negative, the oncologist wanted to keep a close eye on his condition. *Id.* Defendant denied a blood test, stating that unless Sanders was diagnosed with something, the test would waste money and her time. *Id.* Defendant then dismissed Sanders. *Id.*

Sanders filed a grievance the same day he saw Defendant. *Id.* He also retained copies of Inmate Requests he submitted between September 2017 and February 2018, for which he never received responses. *Id*. He was seen by Defendant only after he spoke to his attorney, who intervened and arranged the examination. *Id.* Sanders was not seen again after the April 2018 visit. *Id*.

Sanders now suffers from astigmatism in both eyes and has poor eyesight, 20/100. *Id.* at 2–3. He requires prescription glasses. *Id.* at 3. He suffers from headaches as a result of a delay in receiving glasses. *Id.* Sanders claims that his future employment will be affected because he cannot drive without prescription glasses. *Id.*

### III. DISCUSSION

Sanders contends that Defendant was deliberately indifferent to his serious medical needs.

As the Court explained in the prior ruling, a pretrial detainee's claim for unconstitutional conditions of confinement—including deliberate indifference to the detainee's medical needs—is governed by the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment cruel and unusual punishment clause. *Sanders v. Laplante*, No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *2 (D. Conn. Oct. 25, 2019) ("*Sanders I*") (citing *Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017) and *Valdiviezo v. Boyer*, 752 F. App'x 29, 32-33 (2d Cir. 2018) (*Darnell* standard

applies to claims for deliberate indifference to serious medical needs)).

To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must meet a two-prong test.

The first prong is the same for claims by sentenced prisoners under the Eighth Amendment and pretrial detainees under the Fourteenth Amendment. Under the first prong, the alleged deprivation of medical care must be "sufficiently serious*." See Saahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The second prong differs for sentenced inmates and pretrial detainees. Under the Fourteenth Amendment, the second, or *mens rea*, prong is defined objectively. *Darnell*, 849 F.3d at 35. "[T]he pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

**A. Sufficiently Serious Deprivation**

Generally, to satisfy the first prong of the deliberate indifference standard, a plaintiff must show "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)); *see Salahuddin*,

467 F.3d at 279. The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Alternatively, where "a prisoner receives some care, but allegedly inadequate care, the analysis of whether there was a sufficiently serious medical condition is more complex." *Hardy v. City of New York*, 732 F. Supp. 2d 112, 128 (E.D.N.Y. 2010). In such cases, the court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 279; *see also, e.g.*, *Ferguson v. Cai*, No. 11-6181, 2012 WL 2865474, at *4 (S.D.N.Y. July 12, 2012) (quoting *Edmonds v. Cent. N.Y. Psychiatric Ctr.*, No. 10-5810, 2011 WL 3809913, at (4 (S.D.N.Y. Aug. 25, 2011)) (collecting cases); *DiChiara v. Wright*, No. 06-6123, 2011 1303867, at *6 (E.D.N.Y. Mar. 31, 2011). In evaluating whether a delay in treatment is sufficiently serious, "the actual medical consequences that flow from the alleged denial of care will be highly relevant." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003); *see also Snyder v. Alam*, No. 15-cv-4033, 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016) (stating that "only those injuries plaintiff specifically attributes to the delay will be considered").

In the Initial Review Order, the Court concluded that insulin-dependent diabetes was a sufficiently serious medical condition. *Sanders I* at *3 (citing cases). The Court also considered Sanders' allegation that he suffers from insulin-dependent diabetes, astigmatism in both eyes, and poor eyesight as sufficient to support an allegation that the delay in diagnosing and treating his

6

condition contributed to the degeneration of his eyesight. *Id.* at 7.

Sanders omits from his Amended Complaint any allegation that he has been diagnosed with insulin-dependent diabetes. An amended complaint completely replaces the original complaint. *See Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well-established that an amended complaint ordinarily supersedes the original complaint and renders it of no legal effect." (internal citation and quotation marks omitted)). However, as the Court already has determined that Sanders can sufficiently allege a serious medical condition, the Court adopts that conclusion for purposes of this review.

### B. Sufficiently Culpable State of Mind

Turning to the *mens rea* prong, the Court must determine whether Sanders has plausibly alleged that Dr. LaPlante knew or should have known that her actions posed an excessive risk to Sanders' health. *Darnell*, 849 F.3d at 35. Importantly, even after *Darnell*, it is well-settled that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Clay v. Kellmurray*, 465 F. App'x 46, 47 (2d Cir. 2012) (quoting *Chance*, 143 F.3d at 703); *see also Darnell*, 849 F.3d at 35 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence"). Rather, the applicable standard is akin to civil recklessness, and does not require the defendant to be subjectively aware of the harm resulting from her acts or omissions. *See Feliciano v. Anderson*, No. 15CV3106TSJLC, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017).

In my Initial Review Order, I wrote that "the crux of Sanders' complaint is that Dr. LaPlante failed to order a blood test that may have disclosed his diabetes, despite being informed

of Plaintiff's weight loss, symptoms, and family medical history." *Sanders I* at *4. I explained, however, that "the 'law is clear that a medical decision about whether to order a test . . . is "at most medical malpractice," which can be properly redressed under state tort law.'" *Id.* at 8 (quoting *Youmans v. City of New York*, 14 F. Supp. 3d 357, 363 (S.D.N.Y. 2014) (citation omitted)). The Court further stated that, even construing the Complaint as a challenge to the medical examination Sanders received, the claim was not cognizable because "disagreements over diagnostic methods 'implicate medical judgments and, at worst, negligence amounting to medical malpractice,' but do not give rise to constitutional claims under § 1983." *Id.* (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). Finally, the Court noted that Sanders failed to allege that he met with Defendant on more than one occasion or that he followed up with her after the allegedly unsatisfactory examination. *Sanders I* at *4. Thus, the Court concluded that Sanders failed to plausibly allege that Defendant "knew or should have known" that her decisions "posed an excessive risk" to Sanders' health. *Id.*

However, the Court afforded Sanders an opportunity to file an amended complaint if he could correct the identified deficiencies. *Id.* In response, Sanders has filed this Amended Complaint. As evident from the summary of his factual allegations, Sanders does not allege that he submitted any requests directly to Defendant or was seen by Defendant after the April 2018 examination. Although Sanders filed a grievance, he alleges no facts suggesting that Defendant was aware that he had done so. As Sanders has not corrected the deficiencies identified in the Initial Review Order, the Amended Complaint will be dismissed.

## IV. CONCLUSION AND ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The Amended Complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

(2)     The Clerk is directed to enter judgment. The case will remain closed.

It is SO ORDERED.

Dated at New Haven this 26th day of September 2023.

>            */s/ Charles S. Haight, Jr.*
>            CHARLES S. HAIGHT, JR.
>            Senior United States District Judge